Theodore F. STAATS and Professional Financial Planners, Inc., Plaintiffs,

v.

The OHIO NATIONAL LIFE INSURANCE COMPANY, a corporation, Defendant.

Civ. A. No. 84–2556.

United States District Court, W.D. Pennsylvania.

March 12, 1985.

Herbert Bennett Conner and Ray F. Middleman, Pittsburgh, Pa., for plaintiffs.

Thomas R. Wright, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

Plaintiffs bring this action to recover damages emanating from plaintiff Staats' termination as a general agent of The Ohio National Life Insurance Company (hereinafter referred to as "Ohio National"). The complaint sets forth six theories of liability: Count 1, tortious wrongful discharge; Count 2, violation of constitutional rights; Count 3, breach of agency and/or franchise contractual relationship; Count 4, breach of implied contract; Count 5, tortious conversion of trade secrets; and Count 6, in-

terference with contractual relationships. Defendant moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, under Fed.R.Civ.P. 56. In addition, the defendant moved to dismiss any claim for punitive damages as to Counts 3 and 4; to order a more definite statement as to Counts 5 and 6 pursuant to Fed.R.Civ.P. 12(e); and to strike scandalous or impertinent material contained in paragraph 12 of the amended complaint pursuant to Fed.R.Civ.P. 12(f). This Court will grant defendant's motion to dismiss Counts 1 and 2: all other motions will be denied.

Insofar as defendant moves for dismissal for failure to state a cause of action, the allegations of the complaint must be accepted as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Paolino v. Channel Home Centers*, 668 F.2d 721, 722 (3d Cir.1981). It is well settled that, in deciding such a motion to dismiss, the Court should construe the allegations in the complaint liberally in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. at 1686. The complaint should not be dismissed "unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 236, 94 S.Ct. at 1686, *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### I. *Counts 1 and 2*

Counts 1 and 2 are based upon assertions in paragraphs 11 through 14 of the complaint that the defendant advised plaintiff Staats that he was being terminated because he had been accompanied to the Ohio National "Council of Honor Convention" by a woman who was not his wife. Plaintiff Staats specifically complains in paragraph 12 that before his notice of termination, the defendant "via the conduct of many of its top officers and employees fostered an atmosphere of permissiveness, allowing its general agents, officers, life agents, and employees to engage in open extramarital relationships with impunity." Plaintiff

Staats also asserts in paragraph 15 of Count 1 that defendant's true reason for terminating his employment relationship was the defendant's desire "to obtain employees of the Plaintiff who were recruited and trained by Plaintiff and encouraged by Plaintiff to engage in a business relationship with Defendant, Ohio National."

Plaintiff Staats bases his claim of wrongful discharge on *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), and *Novosel v. Nationwide Insurance Company*, 721 F.2d 894 (3d Cir. 1983). Condensed to a paragraph, plaintiff Staats' argument is as follows:

> In the instant case, Plaintiff was terminated because he was accompanied by a woman who was not his wife, but was presented as his wife, and because he had developed his business to the point that he out-earned even the highest paid officers of Ohio National. As in *Novosel*, the individual's rights of expression and free association are being squashed.

(Docket entry No. 14). As the Third Circuit stated in *Novosel*, wrongful discharge actions arise "where the employment termination abridges a *significant and recognized* public policy." 721 F.2d at 898 (emphasis added). The Third Circuit adopted the definition of a " 'clearly mandated public policy' as one that 'strikes at the heart of a citizen's social right, duties and responsibilities.' " *Id.* at 899, *quoting Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981). Though freedom of association is an important social right, and one that ordinarily should not dictate employment decisions, this Court finds that the right to "associate with" a non-spouse *at an employer's convention* without fear of termination is hardly the kind of threat to "some recognized facet of public policy" that the Pennsylvania Supreme Court envisioned in *Geary* or the Third Circuit contemplated in *Novosel*. In alleging that plaintiff Staats' extramarital relationship was a mere pretense for his discharge, plaintiff Staats claims that he was arbitrarily fired for becoming "too successful." This does not fall within the ambit of a claim based on wrongful discharge or a constitutional right, either.

Defendant has also moved to strike paragraph 12 which is contained in Count 1 of the amended complaint. Although Count 1 will be dismissed, the allegations contained in paragraphs 1 through 19 of Count 1 are incorporated in the other counts of the complaint; therefore, the motion to strike is not moot. Paragraph 12 contains the following allegations:

> At the time of Plaintiff's attempted termination and for a long time prior thereto, Ohio National had no written policy wherein it was indicated that its agents, employees, franchisees, or others with whom it had a business relationship were forbidden from having extramarital relationships and that any such relationships would result in termination of any business relationship with Ohio National. In fact at material times before September, 1984, Ohio National via the conduct of many of its top officers and employees fostered an atmosphere of permissiveness, allowing its general agents, officers, life agents, and employees to engage in open extramarital relationships with impunity so long as the agent, employee, or officer discharged his business responsibilities in a competent fashion.

The allegations contained in paragraph 12 could be pertinent with respect to other counts. Since no person is specifically named in paragraph 12 as conducting an extramarital affair, the material contained in that paragraph is not so scandalous that it must be stricken.

## II. Counts 3 and 4

In Count 3, plaintiff Staats asserts that "his agency and/or franchise relationship with Defendant created a contractual relationship in which Defendant was caused to substantially change his position by investing funds in his general agency," which gave rise to the "reasonable expectation" that the relationship "could be terminated only for good cause." In Count 4, plaintiff Staats asserts that the defendant's

policies, procedures, statements, and course of conduct "gave rise to an implied contractual right of indefinite employment, absent good cause for a termination." The defendant responds that the written contract between the parties provides for termination by either party "without specifying a reason" upon thirty days written notice. Defendant supports its position with the affidavit of Robert J. Lindenberger, Vice President and Director of Agencies of the defendant, to which a copy of the contract and four letters are attached as exhibits.

The complaint itself makes no reference whatsoever to the existence of a written contract between the parties. Assuming that all facts alleged in Counts 3 and 4 are true and that no written contract exists, plaintiff Staats can conceivably prove a set of facts in support of those counts which would entitle him to relief. Although the defendant moved, in the alternative, for summary judgment pursuant to Fed.R. Civ.P. 56, the Court cannot treat a motion to dismiss as one for summary judgment without providing the plaintiffs with a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). Since discovery closes in this case on April 12, 1985, the Court declines to convert this motion to dismiss to one for summary judgment at this time, finding that it would be more efficient to proceed in accordance with the pretrial schedule for the filing of summary judgment motions. Thus, the plaintiffs will also have had the opportunity for "ample discovery into the personnel procedures" of the employer, which the Third Circuit encouraged in *Wolk v. Saks Fifth Avenue*, 728 F.2d 221, 224 (3d Cir.1984), prior to a decision on the merits. Likewise, the Court will deny defendant's motion to strike the claim for punitive damages on Counts 3 and 4 based on the face of the complaint, though this matter may be raised again in the motion for summary judgment.

### III. Counts 5 and 6

In Count 5, the plaintiffs assert that the defendant confiscated confidential customer lists compiled by plaintiff Staats on behalf of Professional Financial Planners, Inc. (hereinafter referred to as "PFP, Inc."). In Count 6, plaintiffs assert that the defendant interfered with their contractual relationships with agents of PFP, Inc. Assuming the allegations are true, these counts state a cause of action.

 With respect to defendant's motion for a more definite statement as to these counts, the Court finds that these counts meet the notice pleading requirement of the Federal Rules of Civil Procedure, and the defendant may use discovery to ascertain additional facts with respect to these counts.

An appropriate Order will be issued.